**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAFAEL IGNACIO GUERRERO | : | |
| SANCHEZ | : | CIVIL NO. 1:15-CV-2423 |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARY SABOL, et al., | : | |
| | : | |
| Respondents | : | |

**REPORT AND RECOMMENDATION**

### I.   Introduction

Over the past 15 years, federal courts considering habeas petitions filed by detained aliens have developed a growing body of case law defining to contours of immigration detainees' due process rights as they are held in custody awaiting resolution of their removal proceedings.  In prescribing the constitutional due process requirements in this setting, courts have focused on the stage and progress of the immigration removal proceedings themselves, and two different analytical paradigms have emerged.

In the normal course of immigration proceedings, for aliens who are in pre-removal proceedings, and are not subject to an administratively final order of removal, the courts have prescribed that an individualized bond consideration is often necessary

after the alien's detention has exceeded one year, effectively shifting the burden of proof and persuasion regarding continued detention to the government after one year of pre-removal detention. See Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015). In contrast, aliens who are subject to a final order of removal are governed by a different set of due process guideposts. These guideposts define a 90 period of post-final removal order detention that is mandatory, and a 6 month term of post-removal detention that is presumptively reasonable. Zadvydas v. Davis, 533 U.S. 678 (2001). Beyond six months' detention, in the post-removal setting: "in order to state a claim [for habeas corpus relief] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, in a post-final removal order setting, the burden of proof remains firmly upon the petitioner at all times to show that he will not be removed in the foreseeable future.

One consequence of this analytical approach, which ties due process rights to the status of an alien's removal proceedings, is that courts on occasion are called upon to determine how the progress of an underlying removal proceeding may affect an alien habeas petitioner's rights. For example, in the normal course of a removal proceeding, once an alien is subject to a final removal order that alien may on occasion

petition for appellate court review of this removal order.  In instances where the court of appeals stays the initial removal order while it considers the alien's petition for review of the removal order it has been held that this stay withdraws this case from post-removal status, and the petitioner's continued detention is governed by the pre-removal due process standards.  See Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012).

In the instant case, we are now called upon to consider another permutation of the question of how the status of an alien's removal proceedings may affect the alien's right to bail consideration.  The petitioner in this case, Rafael Ignacio Guerrero Sanchez, was previously removed from the United States and then returned illegally to this country where he engaged in large-scale drug trafficking.  Following Sanchez's conviction on federal drug charges, and service of his federal drug sentence, he was remanded to immigration custody and the order of removal entered against him many years ago was reinstated.  By statute, this reinstated removal order may not be challenged at this later date, years after the order was entered and long after Sanchez violated the order by re-entering the United States.  Nonetheless, Sanchez has filed a petition with the court of appeals seeking review of this order, and the court of appeals has entered an order staying his removal pending resolution of this petition filed before it.  That petition, however, can only afford Sanchez an extremely narrow range

of relief.  The appellate court cannot undo his prior, reinstated removal order.  Instead, absent unusual circumstances, this review may only affect what countries Sanchez may be removed to by immigration officials.

In this setting, we conclude that the entry of a stay does not fundamentally alter the underlying, and final, nature of the reinstated removal order.  Further, adopting the due process standards that apply in cases involving final orders of removal we find that Sanchez is not entitled to habeas corpus relief in this case.  We further conclude, on the unique facts of this case, that Sanchez still would not qualify for relief even if a less rigorous analytical paradigm were applied to his petition for writ of habeas corpus.

## II.  Statement of Facts and of the Case

The pertinent facts in this case can be simply stated:  On January 24, 1998, the petitioner, Rafael Ignacio Guerrero Sanchez, was ordered removed from the United States to Mexico.  This 1998 removal order was a final order of removal which has never been challenged or set aside over the past 18 years.  Despite the entry of this final order of removal against Sanchez in 1998, Sanchez violated both the order and the immigration laws by illegally re-entering the United States shortly after he was removed.

While residing illegally in this country, Sanchez became involved in drug trafficking and on April 4, 2013, Sanchez was convicted of the offense of Conspiracy to Distribute 50 grams or More of Actual Methamphetamine in violation of Title 21 United States Code Sections 846 and 841(a)(1). Sanchez was sentenced to 42 months imprisonment for his role in this methamphetamine trafficking conspiracy.

Following his conviction on federal drug trafficking charges, Sanchez's 1998 removal order was reinstated on August 23, 2013. This 1998 removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5) which provides for reinstatement of a removal order when the alien has illegally re-entered the United States following a removal. In such circumstances, by statute the "prior order of removal is reinstated from its original date and is *not subject to being reopened or reviewed*." Id. (emphasis added.)

Upon completion of his federal drug trafficking sentence, on May 19, 2015, Sanchez was released from Bureau of Prisons' custody and returned to immigration detention and custody. In the past 15 months Sanchez has engaged in repeated efforts to challenge his removal, and detention. These efforts have thus far been unavailing. As part of these efforts, on April 9, 2015, Sanchez filed his first petition for review and motion for a stay of removal in the United States Court of Appeals of the Third

Circuit.  On June 12, 2015, the  Court of Appeals dismissed the petition and denied the motion for stay of removal.

On June 18, 2015, an Asylum Officer determined that Sanchez had a reasonable fear of returning to Mexico.  Accordingly, on June 29, 2015, Sanchez was "referred to the York Immigration Court by form I-863 for consideration of his application for withholding of removal and protection under Article 3 of the Convention Against Torture."  Following proceedings conducted by the immigration court, on September 23, 2015, the Immigration Judge denied Sanchez's application for protection under the Convention Against Torture.  The Immigration Judge further ordered Ignacio removed from the United States to Mexico.

Sanchez appealed this decision to the Board of Immigration Appeals on October 19, 2015.  In the meanwhile Sanchez received periodic custody reviews.  Thus, on November 17, 2015, Sanchez's custody status was reviewed and it was determined that his detention should be continued.  Additionally, the review noted that because of Sanchez's "pending case, ICE is unable to move forward" with his removal.  Given Sanchez's prior history of disregarding removal orders and indulging in serious criminal conduct while residing in this country illegally this administrative finding was entirely unremarkable.

On January 19, 2016, the Board of Immigration Appeals issued an order dismissing the appeal of Sanchez's application for relief under the Conventional Against Torture.  Sanchez then appealed this decision to the United States Court of Appeals for the Third Circuit and in connection with that appeal filed a motion for stay of removal.  On February 1, 2016, the court of appeals temporarily granted the stay while they consider the motion.

It is against this factual backdrop that the parties present their contrasting claims regarding Sanchez's entitlement to bail consideration while he awaits final action by the court of appeals on his longstanding, and reinstated, removal order.  For the reasons set forth below, in the circumstances presented by this case, we conclude that Sanchez has not made the showing necessary to secure habeas corpus relief, and recommend that this petition be denied.

### III.   Discussion

#### A.   Sanchez's Petition Should Be Denied

As we have noted, this case presents an interesting interplay between substantive immigration removal statutes and the emerging and evolving due process standards which govern federal habeas corpus petitions filed by immigration detainees.  In this case the petitioner's order of removal first became final 18 years ago, in 1998.  Sanchez then promptly violated that removal order, re-entered the

United States and participated in significant and substantial drug trafficking in this country, drug trafficking which resulted in his 2013 prosecution and conviction in federal court.  In the wake of this 2013 conviction Sanchez's 1998 removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), which provides for reinstatement of a removal order when the alien has illegally re-entered the United States following a removal.  In such circumstances, the "prior order of removal is reinstated from its original date and is *not subject to being reopened or reviewed*." Id. (emphasis added.)

It is well-settled that this process by which Sanchez's longstanding final order of removal was initially reinstated presents "no issue of constitutional concern." Ponta-Garcia v. Attorney Gen. of U.S., 557 F.3d 158, 163 (3d Cir. 2009).  Further, the scope of any judicial review of this reinstated removal order is exceedingly limited. As the court of appeals has observed:

> The original order of removal is "not subject to being reopened or reviewed" at the time of the reinstatement determination or on judicial review. 8 U.S.C. § 1231(a)(5).  While this language prohibits relitigation of the merits of the original order of removal, it does not prohibit an examination of whether the original order was invalidated, or preclude judicial review of whether ICE met its obligations in making the reinstatement determination.
>
> Ponta-Garcia v. Attorney Gen. of U.S., 557 F.3d 158, 163 (3d Cir. 2009).

The highly circumscribed scope of judicial review of this reinstated removal order has relevance to our assessment of this habeas corpus petition.  Subject only to

this narrow judicial review of the process by which the order was reinstated, or a judicial determination concerning whether Sanchez can be returned to his homeland, Mexico, the appellate court's consideration of this petition will have no effect on the ability of immigration officials to remove Sanchez.  Instead, any decision on this petition by the appellate court will likely, at most,  only dictate the countries to which Sanchez can be removed.  See 8 U.S.C. § 1231(b)(3).  Thus, the stay entered by the court of appeals in this case has a far more limited effect than a stay entered in a case involving an initial order of removal, where a stay and judicial review of the initial removal order may hold out far greater prospect for relief in the form of an order vacating the removal order.

For these reasons, we agree with respondents that Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012), which dealt with stays of initial removal orders and the implications of such stays for habeas corpus proceedings, does not control here.  While Leslie would permit a more forgiving analysis of habeas petitions lodged by aliens whose initial removal orders had been stayed, that same rationale would not seem to apply to aliens, like Sanchez, who were seeking appellate review of a reinstated removal order.  There are several salient differences between the two situations which would seem to disfavor extending Leslie's holding to reinstated removal orders which are stayed.  First, as we have noted that scope of review of a

reinstated removal order is far more narrow, and the prospects of meaningful relief far less likely, a factor which favors more exacting treatment of these cases. In addition, cases involving reinstated removal orders, by definition, involve aliens who were removed, but then failed to obey a removal order and re-entered the United States without legal authorization. In such instances, where the alien has already failed to comply with the law, the risk of future non-compliance is far greater. Indeed, this case illustrates that very risk in a compelling fashion. Sanchez re-entered the United States following his 1998 removal, and then indulged in large scale drug trafficking, drug trafficking which led to his federal conviction. Thus, Sanchez has now demonstrated a disregard for the laws of the United States that is both persistent and profound. Furthermore, in the United States Sanchez indulged in criminal conduct, drug trafficking, which Congress has found as a matter of law presents a danger to the community. 18 U.S.C. §3143. All of these factors call for a more exacting analysis of Sanchez's claims for habeas corpus relief. In our view, given the greater societal risks which a criminal alien and past removal order violator presents, it would be incumbent upon the appellate court to extend Leslie's holding to this very different class of cases, and we would not presume to make that leap for the court of appeals.[1]

---

[1]In any event, even if we adopted the substantive pre-removal detention standards articulated in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015), Sanchez's on-going disregard for the immigration and criminal laws of the United States would still seem to justify his continued

Given the nature of a reinstated removal order, which by statute is not subject to being reopened or reviewed, courts, including this court, have frequently concluded that such orders should be treated as final orders when analyzing federal habeas corpus claims.  Padilla-Ramirez v. Bible, 16-CV-127, 2016 WL 1555679 *3-5 (D. Idaho April 15, 2016)(holding that an alien challenging a decision on withholding of removal who is subject to a reinstated order of removal was detained pursuant to post-final order detention under 8 U.S.C. § 1231(a)); Sanchez Reyes v. Lynch, Civ. No. 15-cv-00442, 2015 WL 5081597 (D. Colo. Aug. 28, 2015)(same); Dutton-Myrie v. Lowe, Civ. No. 3:CV-13-2160, 2014 WL 547 4617 (M.D. Pa. Oct. 28, 2014)(holding that alien subject to a reinstated order of removal was not entitled to a bond hearing because he was detained pursuant to post-final order detention under 8 U.S.C. § 1231(a)); Santos v. Sabol, Civ. No. 14-CV-0635, 2014 WL 2532491,*3-4 (M.D. Pa. June 5, 2014) ("[W]e agree with Respondents that 8 U.S.C. § 1231 is the applicable

---

detention pending removal.  While Chavez-Alvarez called for "an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community,' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015), in this case Sanchez's disregard for his 1998 removal order, coupled with his involvement in large scale drug trafficking while he resided illegally in this country, strongly suggests that he presents a significant danger to the community and is not likely to comply with any immigration judge orders, since he has failed to comply with such orders in the past.  Therefore, under the substantive standards prescribed by Chavez-Alvarez, the continued detention of Sanchez still seems appropriate.

statute since Petitioner is subject to a [reinstated] final order of removal."); <u>Gomez v. Tsoukaris</u>, Civ. No. 14-CV-1400, 2014 WL 2434311,*2 (D.N.J. May 29, 2014) ("[Petitioner] cannot qualify[] as a § 1226(a) detainee . . . Respondents are correct that Petitioner is a[n] . . . alien whose detention is governed by § 1231 and <u>Zadvydas</u>); <u>Khemlall v. Holder</u>, Civ. No. 14-CV-5186, 2014 WL 5020596,*2-3 (S.D.N.Y. Oct. 8, 2014). Treating this as a case involving an alien under a final order of removal, we find that the petitioner's detention is governed by a set of specific statutory and constitutional rules.

First, by statute, aliens like the petitioner, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal aliens like the petitioner specifically provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B)(I).

In this case, the petitioner has been held for approximately 15 months since he came into immigration custody.  Of this period of detention, the initial 90 days of detention were not only authorized by law, they were actually compelled by the statute.  8 U.S.C. § 1231(a)(2).  As for the remaining, 12 month term of post-removal detention, on the facts of this case we find that Sanchez's continued detention presently does not violate the petitioner's constitutional rights.

For aliens awaiting removal, like the petitioner, the contours of those rights are now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001).  In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by  8 U.S.C. § 1231(a)(1)(A).  Beyond this initial 90-day period the Court concluded that:  "we think it practically necessary to recognize some presumptively reasonable  period of detention."  Id. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time.  We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . .  Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this

6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months.

However, when calculating these detention periods for purposes of analyzing post-removal delay claims brought by immigration detainees two principles must be kept in mind. First, delays attributable to the recalcitrance of the immigration detainee, and his refusal to cooperate with immigration officials, are not to be considered by the courts in making these determinations regarding whether a detainee has experienced excessive delays in deportation. Thus, where an alien refuses to

cooperate with the authorities in affecting his removal he cannot cite the delay in removal which he caused as grounds for habeas relied.  As this Court has observed:

> [A]n "alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him." Pelich v. I.N.S., 329 F.3d 1057, 1061 (9th Cir.2003).  In [such] a case, the Court[s] determined that the continued detention of the alien was due to his own conduct: . . .  Thus, the [court] has interpreted INA § 241(a)(1)(C) after Zadvydas to permit continued detention of a removable alien "so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents." Lema v. INS, 341 F.3d 853, 857 (9th Cir.2003).  Similarly, district courts to consider this issue ask whether the petitioner has the "keys to his freedom," Pelich, 329 F.3d at 1060, to determine whether he is preventing his own removal pursuant to INA § 241(a)(1)©.  See, e.g., Clark v. Ashcroft, No. 03-3320, 2003 WL 22351953 at *3-4 (E.D.Pa. Sept. 16, 2003)(alien initially misrepresented his country of origin, but later gave his true name and identity; the government showed no evidence of non-cooperation since that time); Rajigah v. Conway, 268 F.Supp.2d 159, 165-66 (E.D.N.Y.2003) (finding no bad faith failure to cooperate where alien made truthful statements to Guyanese ambassador regarding his intent to file another court action, which the government considered failure to comply); Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 51-53 (D.D.C.2002) (alien's truthful statements to Liberian officials that he did not wish to return to Liberia did not amount to bad faith failure to cooperate since it was not the reason for failure to issue travel documents; rather, it was their concern for his lack of ties to that country); Powell v. Ashcroft, 194 F.Supp.2d 209, 210 (E.D.N.Y.2002) (repeated inconsistencies regarding alien's identity "demonstrably hampered the INS in carrying out his removal").  Thus, this Court must carefully examine the record to determine Petitioner's part in his continued detention.

Abdel-Muhti v. Ashcroft,  314 F.Supp.2d 418, 427-28 (M.D.Pa.,2004).

Likewise, delays occasioned by a petitioner's post-removal efforts to litigate the removal order are often given little weight when assessing the duration of any post-removal order detention.  Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002) Moulton v. Sabol, No. 3:CV-12-0922, 2012 WL 6012133, at *4 (M.D. Pa. Aug. 6, 2012), report and recommendation adopted in part, No. 3:12 CV 0922, 2012 WL 6012799 (M.D. Pa. Dec. 3, 2012) citing Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1365 (N.D.Ga. 2002).

In addition, cases construing Zadvydas recognize that the presumptively reasonable six-month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention.  It is not an ironclad time frame within which aliens must be removed, or released.  Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months," id. at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure release pending removal.  In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir.

2002). See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009);

Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006);

Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005).

In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.  See, e.g., Joseph v. United States, 127 F. App'x 79 (3d Cir. 2005) (11 months); Boyce v. Holder, 09-2254, 2010 WL 817482 (M.D. Pa. March 9, 2010)(18 months);  Robinson v. District Director, No. 09-637, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009) (1 year); Nma v. Ridge, 286 F.Supp.2d 469 (E.D.Pa. 2003)(11 months).

While this legal framework affords substantial protections to aliens who are subject to final removal orders, application of these legal standards to this case provides no grounds for affording habeas relief to the petitioner at this time.  Although

Sanchez's post-removal detention has now exceeded one year in duration, a period of time which exceeds the presumptively reasonable time frame described by the Supreme Court in <u>Zadvydas</u>, that delay is entirely due to Sanchez's belated legal efforts to resist this longstanding reinstated removal order.  Sanchez may not now profit from the delay he has created and cite that self-created delay as grounds for release.  <u>See</u> <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002) <u>Moulton v. Sabol</u>, No. 3:CV-12-0922, 2012 WL 6012133, at *4 (M.D. Pa. Aug. 6, 2012), <u>report and recommendation adopted in part</u>, No. 3:12 CV 0922, 2012 WL 6012799 (M.D. Pa. Dec. 3, 2012) citing <u>Fahim v. Ashcroft</u>, 227 F.Supp.2d 1359, 1365 (N.D.Ga. 2002).   Further, Sanchez's history of non-compliance with federal immigration and drug trafficking laws aptly illustrates why detention is appropriate here.  Moreover, Sanchez has made no showing that his removal from the United States will not be feasible once his litigation of the reinstated removal order draws to a close.   Quite the contrary, it is entirely undisputed that Sanchez has been successfully removed from the United States to Mexico in the past, only to return in violation of the law.  Since "in order to state a claim under <u>Zadvydas</u> the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052

(11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006); Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005), this finding that Sanchez's removal can be accomplished in the reasonably foreseeable future is fatal to this petition.

While we reach this view regarding the current lawfulness of the petitioner's detention, we also recognize the petitioner's concerns that removal proceeding may result in substantial additional delay and detention.   Although we find that the petitioner has not presently carried his burden of proof under Zadvydas, justifying habeas corpus relief at this time, we remain mindful of the Supreme Court's admonition that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink".   Zadvydas, 533 U.S. at 701.   In this regard, this Court's prior observation is particularly apt:

> Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Thus, if time passes with no progress on removal, [the petitioner] may file a new 2241 petition challenging his continued detention. . . if specific events occur indicating he would not be removed in the reasonably foreseeable future.  We add, however, that we express no opinion on whether such a motion would succeed in either circumstance.

<u>Aishrat v. Mukasey</u>, No. 08-786, 2008 WL 3071003, *2 (M.D.Pa. Aug.1, 2008).

Accordingly, immigration officials should remain alert to their legal responsibility to

ensure the petitioner's prompt removal from the United States, and strive to expedite

his return to his homeland, once his collateral litigation before the court of appeals has

concluded.

### IV.    <u>Recommendation</u>

For the foregoing reasons, upon consideration of this Petition for Writ of

Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED without

prejudice to renewal at such time, if any, that the delay and detention may become

unreasonable and excessive.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
> of a prisoner case or a habeas corpus petition within fourteen (14) days
> after being served with a copy thereof.  Such party shall file with the
> clerk of court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the proposed
> findings, recommendations or report to which objection is made and the
> basis for such objections.  The briefing requirements set forth in Local
> Rule 72.2 shall apply.  A judge shall make a de novo determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made and may accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> magistrate judge.  The judge, however, need conduct a new hearing only
> in his or her discretion or where required by law, and may consider the
> record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of July 2016.

> *S/Martin C. Carlson*
> Martin C. Carlson
> United States Magistrate Judge