UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RAFAEL IGNACIO GUERRERO : 
SANCHEZ, :
        Petitioner :
         :
    v. : CASE NO. 1:15-CV-2423
         :
MARY SABOL, *et al.*, :
        Respondents :

*M E M O R A N D U M*

*I.*    *Background*

Pursuant to the December 23, 2016 memorandum opinion and order (Docs. 45, 46), this court held an individualized bond hearing for Rafael Ignacio Guerrero Sanchez ("Petitioner") on February 9, 2017. The extensive procedural history of Petitioner's case was fully set forth in the December 23, 2016 opinion, (see Doc. 45 at 1-6), and will not be repeated here. Petitioner is currently being detained by Immigration and Customs Enforcement ("ICE") while his withholding of removal claim progresses through the administrative system. He has been detained since May 19, 2015. (Id. at 3). For the following reasons, the court will release Petitioner on conditions.

*II.*    *Standard of Review*

In Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011), the Third Circuit explained that the purpose of continued detention under 8 U.S.C. § 1226[1] must be to

---

[1] The court, in its September 19, 2016 memorandum, determined that Petitioner—who is subject to a reinstated order of removal but has pending an application for protection under the CAT—is being detained under 8 U.S.C. § 1226 ("pre-removal" detention) rather than 8 U.S.C. § 1231 ("post-removal" detention). (See Doc. 23 at 7-11).

facilitate the detention statute's goals of "ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." Id. at 231. The government must justify its continued detention of the detainee. Id. at 232. Accordingly, the government bears the burden of proving "that continued detention is necessary to fulfill the purposes of the detention statute." Id. at 233.

When a section 1226 detainee is due a bond hearing, that hearing must be "individualized." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015); Leslie v. U.S. Attorney Gen., 678 F.3d 265, 271 (3d Cir. 2012); Diop, 656 F.3d at 233. Mechanistic reliance on factors that are common to all section 1226 detainees will not suffice. See Singh v. Holder, 638 F.3d 1196, 1205-06 (9th Cir. 2011) (explaining that all alien detainees in section 1226 bond hearings presumably have at least one crime in their past giving rise to their removal orders, and have been ordered removed by a final, administrative order, and thus the presence of these factors alone does not necessarily warrant denial of bail); Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398-99 (3d Cir. 1999).

Furthermore, the assessment of a section 1226 detainee's dangerousness and risk of flight must be made on a current basis. In Chi Thon Ngo v. I.N.S., 192 F.3d 390 (3d Cir. 1999), the Third Circuit emphasized the importance of making a present assessment of a detainee's level of risk in light of the fundamental liberty interest at stake:

> When detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable. The fact that some aliens posed a risk of flight in the past does not mean that they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption. Measures must be taken to assess the risk of flight and danger to the community on a *current basis*. The stakes are high and we emphasize that

2

> grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens.

Id. at 398 (emphasis added).[2] It follows that submissions by the detainee showing, inter alia, reform, rehabilitation, good character, education, employment history and prospects, familial ties to United States citizens, potential for relief from removal, and any other evidence that contravenes danger to the community or risk of flight must be considered, as such evidence is highly relevant to ascertaining the detainee's current risk level. See, eg., id. at 393 (explaining types of evidence detainee submitted in support of petition for bond); see also In re Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (listing factors to be considered in detainee bond determinations).

When assessing danger to the community, the extensiveness, recency, and severity of a detainee's past criminal activity must be considered. Singh, 638 F.3d at 1206 (citing Guerra, 24 I. & N. Dec. at 40). When assessing risk of flight, common-sense considerations include whether the imposition of conditions of release could mitigate flight risk, and whether the detainee has strong family ties to the United States. Leslie, 865 F. Supp. 2d at 640; Chi Thon Ngo, 192 F.3d at 398.

Finally, although the Third Circuit has not yet addressed the issue, this court has found that the appropriate level of proof required from the government in these bond determinations is clear and convincing evidence of risk of flight or danger to the community. See Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426129, at *5-6 (M.D. Pa. Dec. 23, 2016) (Caldwell, J.) (citing Lora v. Shanahan, 804 F.3d 601, 616 (2nd Cir. 2015), and Singh, 638 F.3d at 1203 (9th Cir. 2011)). As the Court of Appeals for the Ninth Circuit aptly explained,

---

[2] Notably, Chi Thon Ngo involved a post-removal detainee facing certain removal from the United States, unlike Petitioner and other section 1226 "pre-removal" detainees. See id. at 392-95.

3

> [E]ven where prolonged detention is permissible, due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint. Because it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection. The Supreme Court has repeatedly reaffirmed the principle that due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than the mere loss of money. For [section 1226] detainees like Singh, who face years of detention before resolution of their removability, the individual interest at stake is without doubt particularly important and more substantial than mere loss of money, and therefore a heightened standard of proof is warranted.

Singh, 638 F.3d at 1203-04 (internal quotation marks and citations omitted). The Singh court further reasoned that because a heightened standard of proof is applied in many other immigration contexts, including those where the immigrant bears the burden of proof, it makes sense that the "clear and convincing evidence" standard should also apply to the government in section 1226 bond hearings. Id. at 1205 n.4. This court has found the reasoning of Singh court persuasive, and concurs that the appropriate standard of proof is clear and convincing evidence. Guerrero Sanchez, 2016 WL 7426129, at *6.

*III.        Discussion*

    A. The Parties' Arguments

Respondents contend that bond should be denied because Petitioner is both a danger to the community and a flight risk. Respondents mainly rely on Petitioner's previous drug conspiracy conviction and his unlawful immigration status to support their contentions. They maintain that because drug trafficking is an inherently violent criminal activity, and because Petitioner was detained during the criminal proceedings prior to

4

pleading guilty, Petitioner is presently a danger to the community. They further maintain that Petitioner's illegal entrance into the United States in 1998 with false documents and his ongoing removal proceedings indicate that he is a current flight risk as well.

Petitioner counters Respondents' claims with a host of evidence including, but not limited to, (1) a court order and an executed limited power of attorney to corroborate his mother's motor vehicle injury and her need for prescription medication, which was the purported reason Petitioner left the United States and traveled to Mexico in 1998; (2) IRS Form 1040s for 1999 to 2002 and 2004 to 2011 evidencing Petitioner's filing of federal income tax returns and payment of income tax; (3) Petitioner's May 19, 2015 notice of release and arrival indicating his "good conduct time release" from federal incarceration into ICE custody; (4) multiple notarized letters from Petitioner's co-workers and employers averring to his good character and plumbing expertise, as well as indicating that they would consider hiring Petitioner for plumbing work if he were released from detention; (5) Petitioner's wife's June 21, 2016 notice of approval of relative immigrant visa petition; (6) a January 26, 2015 letter from the correctional center chaplain explaining that Petitioner, since the summer of 2013, had consistently attended Catholic Mass, participated as a musician for Catholic Mass, and acted as the music overseer and equipment trainer for the Mass programming; (7) a February 3, 2015 letter from the prison vocational coordinator explaining that Petitioner had been working since December 2013 for the vocational education department instructing other inmates in plumbing and HVAC in both English and Spanish, and that Petitioner also had worked on projects in the prison itself alongside the maintenance crew; (8) Petitioner's November 26, 2014 certificate of completion of "Choice and Change Drug Abuse Education Program"; (9) a copy of

Petitioner's Nevada marriage certificate; (10) Petitioner's résumé outlining his extensive residential and commercial plumbing experience, licensing, and employment history; (11) copies of Petitioner's numerous plumbing and fire safety certificates and licenses; (12) a September 27, 2016 letter from one of Petitioner's three daughters, Jocelyn Guerrero, directed to the Immigration Court, highlighting the difficulty of not having Petitioner to support the family and requesting an affordable bail determination; and (13) a September 28, 2016 letter from another one of Petitioner's daughters, Sandra Guerrero, directed to the Immigration Court, highlighting Petitioner's good character, explaining the strain of losing Petitioner's financial and familial support, and requesting an affordable bail determination.  (Doc. 39-1).

Petitioner also provided relevant documents from his ongoing claim for withholding of removal under the Convention Against Torture ("CAT").  Most recently, the Third Circuit granted his petition for review based on his application for protection under the CAT, vacated the prior order of the BIA, and remanded the matter to the BIA for further proceedings.  Guerrero v. U.S. Attorney Gen., No. 16-1217 (3d Cir. Oct. 19, 2016); (Doc. 37-1).  In its opinion, the Third Circuit found that the IJ and the BIA had too narrowly construed the government-acquiescence-to-torture standard under the CAT.  Guerrero v. U.S. Attorney Gen., No. 16-1217, at 6 (3d Cir. Nov. 30, 2016).  The Third Circuit concluded that

> the BIA erred by failing to consider whether record evidence of the violence caused by the Sinaloa cartel and corruption of law enforcement officials demonstrated that it is more likely than not that Guerrero will be tortured "by or at the instigation of or with the consent or acquiescence of a public official . . . ."  If it is, Guerrero may have met his burden under the CAT.

Id. at 7 (citation omitted).

6

In addition, the Presentence Investigation Report ("PSR"), (Doc. 41), for Petitioner's years-old drug conspiracy conviction shows that Petitioner has no criminal history. (Doc. 41 at 25). The PSR further indicates that Petitioner accepted responsibility for his actions. (Id. at 23-24). Petitioner also notes that he has repeatedly expressed remorse for his prior criminal episode. He further avers that he had no disciplinary infractions while incarcerated or detained, and that he has never missed an immigration court hearing or proceeding.

Finally, Petitioner has provided evidence of his marriage to United States citizen Sandra Guerrero, as well as the birth of his three citizen daughters to this marriage. (Doc. 52-1 at 3-7). Petitioner's wife and eldest daughter flew from Las Vegas, Nevada to attend the instant bond hearing, and his wife testified on Petitioner's behalf and also volunteered to be his custodian if he were released. Petitioner's wife testified that she has lived in Las Vegas, Nevada for over twenty years, and that Petitioner has not returned to Mexico since his 1998 trip. She further testified that when federal authorities came to arrest Petitioner for the prior drug crime, she called Petitioner and told him that law enforcement was present, and he immediately returned home and turned himself over rather than trying to flee.

### B. Respondents Have Failed to Carry Their Burden

After conducting the instant bond hearing and thoroughly reviewing the record evidence proffered by the parties, the court finds that Respondents have failed to carry their burden. That is, Respondents have not shown by clear and convincing evidence, or even a preponderance of the evidence, that Petitioner's continued detention is necessary to facilitate the goals of the detention statute.

*1. Petitioner Is Not a Current Flight Risk*

The court finds that the overwhelming majority of record evidence indicates that Petitioner is not a current flight risk—*i.e.*, that he is likely to attend removal proceedings. First, Petitioner has a wife and three daughters living in Las Vegas, Nevada—all of whom are United States citizens. Petitioner's wife testified that he could reside with his family if he were released, and that she would act as his custodian. These substantial familial ties cut strongly in favor of finding that Petitioner is not a current flight risk. See Leslie, 865 F. Supp. 2d at 640 (explaining that "courts have long recognized" that having extensive family ties to the United States "strongly militates against a risk of flight") (citing United States v. Himler, 797 F.2d 156 (3d Cir. 1986); United States v. Carbone, 793 F.2d 559 (3d Cir. 1986)).

Equally persuasive is Petitioner's ongoing withholding of removal claim, which clearly has merit and may yet provide relief from his final order of removal. Petitioner has every reason to attend future immigration proceedings, not the least of which is his credible fear of being returned to Mexico and facing members of the Sinaloa cartel, who have physically injured his brother and threatened Petitioner's life. Petitioner's wife confirmed this fear during her testimony at the bond hearing.

Finally, there are conditions of release that will further assure Petitioner's appearance at future immigration proceedings. Such conditions include contacting immigration officials before a change of residence or telephone number, having Petitioner's wife act as a custodian who will agree to supervise Petitioner and ensure his appearance at immigration proceedings, and restricting Petitioner's travel radius.

### *2. Petitioner Is Not a Current Danger to the Community*

The great weight of record evidence also indicates that Petitioner is not a present danger to the community. To be sure, Petitioner committed a serious crime. As the Third Circuit has admonished, it is not that past "convictions are no longer relevant. [But d]ue process is not satisfied . . . by rubberstamp denials based on temporally distant offenses. The process due even to . . . aliens requires an opportunity for an evaluation of the individual's *current* threat to the community[.]" Chi Thon Ngo, 192 F.3d at 398 (emphasis added). Indeed, "presenting danger to the community at one point by committing a crime does not place [a detainee] forever beyond redemption." Id.

Here, Petitioner has provided substantial evidence that he is not a present danger to the community. See supra pp. 5-7. That evidence includes the absence of any criminal history beyond his drug conspiracy conviction, acceptance of responsibility for his criminal conduct, extensive evidence of rehabilitation and good conduct while incarcerated and detained, multiple offers of support from family and employers if he were to be released, and numerous sworn statements attesting to Petitioner's good character.

Respondents, meanwhile, have attempted to carry their burden by relying almost exclusively on Petitioner's years-old drug conspiracy conviction and generalities regarding the violent nature of the drug trade. But such generalities, by their nature, are not "individualized" considerations of Petitioner's danger to the community, as the law requires. See Chavez-Alvarez, 783 F.3d at 478; Leslie, 678 F.3d at 271; Diop, 656 F.3d at 233. Moreover, "[d]ue process is not satisfied . . . by rubberstamp denials based on temporally distant offenses." Chi Thon Ngo, 192 F.3d at 398. Accordingly, the court finds

that the record evidence militates strongly in favor of finding that Petitioner is not a present danger to the community.

*V.        Conclusion*

        Rafael Ignacio Guerrero Sanchez has now been detained for more than one year and eight months beyond the thirty-seven months' incarceration he served for his underlying criminal conviction.  Today, the court finds that Petitioner is neither a current flight risk nor a danger to the community.  Therefore, his continued detention is *not* necessary to fulfill the purposes of the detention statute.  Accordingly, an order releasing Petitioner from detention and setting forth appropriate conditions of release will follow.

                                             /s/ William W. Caldwell
                                             William W. Caldwell
                                             United States District Judge