# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAFAEL IGNACIO GUERRERO
SANCHEZ,

        Petitioner,

    v.

MARY SABOL, THOMAS R.
DECKER, JACQUELINE
OSTERLIND, THOMAS S.
WINKOWASKI, JEH CHARLES
JOHNSON,

        Respondents.

No. 1:15-CV-02423

(Judge Brann)

## MEMORANDUM OPINION
### AND
## ORDER

**MAY 3, 2019**

## I.    BACKGROUND

This Petitioner, Rafael Ignacio Guerrero Sanchez ("Guerrero"), an alien as defined by 8 U.S.C.A. § 1101(a)(3), has an extensive immigration history spanning the last twenty-nine years since he first entered the United States illegally. Guerrero first entered the United States from Mexico in July 1990 without inspection. Seven years later, he married a then lawful permanent resident, now a citizen, Sandra Avila. Guerrero and his wife had three children, all born in the United States, and consequently, all citizens.

At an undetermined later point, Guerrero travelled back to Mexico and then attempted to return to the United States using falsified documents. U.S. Customs and

Border Protection immediately recognized the documents as falsified. As a result, on January 24, 1998, border patrol found him to be inadmissible for having sought admission by fraud or misrepresentation, in violation of 8 U.S.C. § 1182(a)(6)(C)(ii) and an expedited order of removal was issued pursuant to 8 U.S.C. § 1225(b)(1)(A)(i) for having attempted to illegally enter the United States.

Guerrero later illegally re-entered the United States a third time and returned to his family. In 2012, Guerrero was arrested as part of a drug conspiracy, plead guilty in the United States District Court for the District of Idaho to one count of conspiracy to distribute in excess of fifty grams of methamphetamine[1], and was sentenced in April 2013 to a term of forty-two months imprisonment.

On December 5, 2012, after his arrest and prior to sentencing, Guerrero was notified that Immigrations and Customs Enforcement ("ICE") intended to reinstate the January 24, 1998 order of removal[2]. After asserting that he would be tortured by a Mexican drug cartel if removed to his home country, Guerrero was referred to a Department of Homeland Security ("DHS") asylum officer for a reasonable fear interview as required by 8 U.S.C.A. § 1158 and 8 C.F.R. § 238.1 and 241.8. In the

---

[1]   A crime that qualifies as an "aggravated felony" under the Immigration and Nationality Act, 8 U.S.C. §1101(a)(43)(C). Thus, Guerrero was deportable pursuant to the INA § 237(a)(2)(A)(iii) which states that "any alien who is convicted of an aggravated felony at any time after admission is deportable."

[2]   INA § 241(a)(5) provides that a prior order of removal against a noncitizen will be reinstated if the noncitizen reenters the United States "illegally" or "unlawfully." *See also* 8 C.F.R. § 241.8 which governs the process for reinstatement of removal.

meantime, the removal order was reinstated on August 23, 2013.[3] On April 9, 2015, Guerrero filed to stay the removal order with the United States Court of Appeals for the Third Circuit. That court denied the motion on June 12, 2015.

On May 19, 2015, after Guerrero served his term of incarceration for his criminal conviction,[4] he was transferred to ICE custody pending removal. On June 1, 2015, ICE officials informed Guerrero that his custody status would be reviewed in August 2015 and that he would be considered for supervised release if he was not removed within the statutory removal period set forth in 8 U.S.C. § 1231(a).

On June 29, 2015, an asylum officer made a 'Reasonable Fear Determination' finding that Guerrero's fear of persecution if returned to Mexico was reasonable and referred him to an immigration judge pursuant to 8 C.F.R. § 1208.31(e) for a 'withholding-only' proceeding. And, on August 5, 2015, ICE reviewed Guerrero's custody status and made a decision to maintain custody over Guerrero deeming him to be a flight risk because he had entered and attempted to enter the United States several times with the intent to evade immigration controls.

Guerrero then initiated withholding-only proceedings before the immigration court seeking either withholding of removal to Mexico, or, in the alternative,

---

[3]   The Department of Homeland Security has the discretion to issue a final removal order to an alien who has been convicted of an aggravated felony and is not a lawful permanent resident of the United States. INA § 238. Moreover, the Department of Homeland Security may issue a reinstatement of removal order to an alien if it discovered that the noncitizen "has reentered the United States illegally after having been removed…under an order of removal." 8 C.F.R. § 241.8.

[4]   A term of 37 months after he received good time credits from the Bureau of Prisons.

deferring his removal under the Convention Against Torture. On September 23, 2015, the immigration judge denied Guerrero's requests on both bases. The withholding of removal under 8 U.S.C. § 1231(b)(3) was denied because the immigration judge found that Guerrero's drug offense qualified as a "particularly serious crime," thus making him ineligible for withholding of removal. The immigration judge also denied Guerrero's petition under the Convention Against Torture because he could not show that the Mexican Government would torture Guerrero or allow government-sponsored torture. The immigration judge stated that Guerrero did "not [meet] his burden of establishing by a preponderance of the evidence that the Mexican Government would consent to or be willfully blind to [his] hypothetical torture."

On October 19, 2015, Guerrero appealed the immigration judge's decision to the Board of Immigration Appeals. ICE re-reviewed Guerrero's custody status on November 17, 2015 and determined that the agency could not remove Guerrero pending a final 'fear' determination.

On December 17, 2015, Guerrero, proceeding *pro se*, filed the instant petition for writ of habeas corpus before this Court seeking an individualized bond hearing. The Honorable William W. Caldwell, of this Court, ordered an individualized bond hearing before an immigration judge. On October 3, 2016, the immigration judge found that Guerrero was both a flight risk and a danger to the community; he denied Guerrero's request for release on bail.

On January 19, 2016, pursuant to 8 C.F.R. §§ 1208.16-18, the Board of Immigrations Appeals denied Guerrero's appeal and affirmed the immigration judge's denial of protection under the Convention Against Torture.  Subsequently, Guerrero moved in the Third Circuit to stay his removal and petitioned for review of the Board of Immigration Appeals decision.  The Third Circuit stayed Guerrero's removal while it considered Guerrero's petition for review.  On October 19, 2016, the Third Circuit vacated the Board of Immigration Appeals removal order and remanded the matter to the Board to consider whether Guerrero met his burden under the Convention Against Torture,[5] concluding that the Board erred by "failing to consider whether record evidence of the violence caused by the Sinaloa cartel and corruption of law enforcement officials demonstrated that it is more likely than not[6] that Guerrero will be tortured 'by or at the instigation of or with the consent or acquiescence of a public official.'"[7]

Judge Caldwell held his own individualized bond hearing for Guerrero on February 9, 2017.  By the time of this hearing, Guerrero had been in ICE custody for 20 months and 21 days.  Judge Caldwell then released Guerrero finding that the

---

[5]  A petitioner is "entitled to Convention Against Torture protection if he is able to demonstrate that the cumulative probability of torture by the entities [collectively] exceeds 50%." *Kamara v. Att'y Gen.*, 420 F.3d 202, 213-215 (3d Cir. 2015).

[6]  The 'more likely than not' standard means that there is more than a 50% likelihood of persecution or torture.  The withholding 'more likely than not' standard is more difficult to prove than asylum's 'well-founded fear' standard.

[7]  *Guerrero v. Attorney Gen.*, 672 F. App'x 188, 191 (3d Cir. 2016) *citing* 8 C.F.R. § 1208.18(a)(1).

Government had not shown by clear and convincing evidence that Guerrero's continued detention was necessary because he was neither a current flight risk nor a current danger to the community.[8] The Government appealed.

On September 26, 2018, the Third Circuit again took up Guerrero's case, this time considering the issue of detention and upheld Judge Caldwell's release of Guerrero. The Court of Appeals decided, as a matter of first impression in this Circuit, whether "the detention of an alien, such as Guerrero-Sanchez, who has a reinstated order of removal but is also pursuing withholding-only relief governed by § 1226(a) or § 1231(a)? If the former, then such aliens are statutorily permitted to a bond hearing. But if we find that § 1231(a) controls, then we must answer a second question: does § 1231(a)(6) compel an implicit bond hearing requirement after prolonged detention?"[9] The Third Circuit held "that § 1231(a) governs Guerrero-Sanchez's detention and that § 1231(a)(6)[10] affords a bond hearing after prolonged detention to any alien who falls within the ambit of that provision,"[11] affirming Judge Caldwell's decision to hold a bond hearing on alternative grounds.

---

[8]   ECF No. 55 at 7-9.

[9]   *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 211 (3d Cir. 2018).

[10]  Section 1231(a)(6) states "(6) Inadmissible or criminal aliens. An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

[11]  *Id.*   The Third Circuit opinion further expands a circuit split on this issue.  Compare *Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016 ) (holding that § 1226(a) governs).

To determine if Guerrero was entitled to a bond hearing, the Third Circuit

examined which statute was the source of authority for his detention, explaining:

> The authorization for an alien's detention shifts from § 1226(a) to §
> 1231(a)—that is, from the pre-removal phase to the post-removal phase—
> at the point that the alien's order of removal becomes administratively
> final and removal is therefore certain. *See* 8 U.S.C. § 1231(a)(1)(B). Thus,
> which provision governs here depends on whether the removal order
> entered against Guerrero-Sanchez is administratively final: if it is final,
> then § 1231(a) applies; otherwise, § 1226(a) controls.
> Crucial to this determination is the fact that Guerrero-Sanchez's removal
> order was reinstated "from its original date and is not subject to being
> reopened or reviewed." 8 U.S.C. § 1231(a)(5).5 Although aliens with
> reinstated orders of removal are "not eligible and may not apply for any
> relief" under Chapter 12 of the INA, *id*., they may seek withholding-only
> remedies, *see Cazun v. Attorney Gen. United States*, 856 F.3d 249, 255-
> 56 (3d Cir.2017) ("[P]recedent and the Attorney General's own
> interpretation clarify that withholding from removal and CAT
> protection—both forms of relief—are actually still available to individuals
> in reinstatement proceedings." (*citing Fernandez-Vargas v. Gonzales*, 548
> U.S. 30, 35 n.4, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006); 8 C.F.R. §§
> 1208.31(e), 1208.16(c)(4))). Accordingly, in order to resolve this case, we
> must decide whether a reinstated order of removal against an alien who,
> like Guerrero-Sanchez, is pursuing bona fide withholding-only relief is
> administratively final.

> With this framing of the issue in mind, we find that § 1231(a), the post-
> removal provision, is the more logical source of authority for Guerrero-
> Sanchez's detention. A removal order is unquestionably final when it is
> first entered. *See* 8 C.F.R. § 241.1. When such an order is subsequently
> reinstated, as happened here in Guerrero-Sanchez's case, "it stands to
> reason that it retains the same administrative finality because section
> 1231(a)(5) proscribes any challenge that might affect the status of the
> underlying removal order." *Padilla-Ramirez*, 882 F.3d at 831. Indeed,
> when a reinstated order of removal is in place, withholding-only
> proceedings do not disturb the underlying order of removal; rather, they
> only potentially impede the order's execution with respect to a specific
> country. *See* § 1208.2(c)(3)(i). If Guerrero-Sanchez were to ultimately
> prevail on either his withholding or CAT claim, the resulting remedy
> would prohibit only his removal to the country of risk: Mexico. It would
> not prohibit his removal from the United States to an alternative, non-risk
> country. *See, e.g., Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir.2004)

(stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country" (*quoting Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir.2003), *holding modified by Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir.2006) ) ). Thus, "[t]he removal order itself ... is not at issue in the withholding-only proceedings, meaning that those proceedings cannot diminish or otherwise affect its finality." *Padilla-Ramirez*, 882 F.3d at 832.

\*\*\*\*\*

Accordingly, we hold that a reinstated order of removal against an alien who has initiated withholding-only proceedings is administratively final. Therefore, just as we elect to follow *Padilla-Ramirez*, we concurrently decline to follow *Guerra* …. We agree with the Ninth Circuit that "[i]n concluding that the 'purpose of withholding-only proceedings is to determine precisely whether the alien is to be removed from the United States,' the [Second Circuit] did not paint with a fine enough brush." *Padilla-Ramirez*, 882 F.3d at 835 (citations and internal quotation marks omitted) (*quoting Guerra*, 831 F.3d at 62).

\*\*\*\*\*

To summarize, Guerrero-Sanchez's detention is governed by § 1231(a). A reinstated removal order is administratively final for the purposes of removal because it provides that an alien "shall be removed" from the United States, and that determination is "not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). An alien with a reinstated order of removal therefore cannot have a decision "pending" before an immigration judge on "whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). As a result, such aliens cannot fulfill the necessary predicate to implicate § 1226(a), and they cannot rely on that provision to obtain a bond hearing.[12]

In sum, the Third Circuit reasoned that Section 1231(a) entitled aliens to a bond

hearing pursuant to the "implicit bond hearing requirement of § 1231(a)(6)" after

---

[12] *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 215-19 (3d Cir. 2018).

"prolonged detention" beyond the 90 days that is authorized by that statute under certain circumstances.[13]

At the present time, Guerrero is awaiting a renewed reasonable fear hearing before an immigration judge, while ICE detained him again, despite Judge Caldwell's release Order. This detention prompts Guerrero to file the instant Motion to Compel enforcement of that Order. Judge Caldwell retired from this Court in February 2018 and this case was reassigned to the undersigned on January 22, 2019.

## II. DISCUSSION[14]

Guerrero's continued detention is clearly governed by Section 1231(a) pursuant to the above cited Third Circuit case bearing his name.[15] This Court looks to the same standard of review our Court of Appeals set forth in September 2018 in upholding

---

[13] *Id.* at 219.

[14] The Court retains jurisdiction over this habeas petition and has the authority to enforce its own orders. *See, e.g., Ex parte Mitsuye Endo*, 323 U.S. 283 (1944) (Holding that the objective of 28 U.S.C.A. § 2241 may not be impaired or defeated by removal of prisoner from territorial jurisdiction of the District Court.); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir. 2004) ("*Endo* did not, as Stokes maintains, 'relax' the immediate custodian rule but rather recognized the continuing jurisdiction of the court in which that rule is first satisfied."); *White v. Grace*, No. CIV.A. 3:05-0164, 2005 WL 1309044, at *3 (M.D. Pa. June 1, 2005) (Kosik, J.) ("The immediate custodian rule does not apply when a prisoner is transferred out of a judicial district after he has filed a petition for writ of habeas corpus with the district court…In such an instance, the district court in which the petition was filed retains jurisdiction over the case despite the fact that the prisoner, and his immediate custodian, lie in another federal district."); *Madrane v. Hogan*, No. CIV.A.3:05-02228, ECF No. 63 (M.D. Pa. December 10, 2007) (Kane, J.).

[15] *Guerrero-Sanchez, supra* at 219.

Judge Caldwell's February 13, 2017 order. "That provision implicitly requires a bond hearing after prolonged detention."[16]

In *Guerrero-Sanchez,* the Third Circuit cited to *Zadvydas v. Davis*,[17] a case where the United States Supreme Court recognized that noncitizens who have been granted deferral of removal under the Convention Against Torture may challenge the Department of Homeland Security's detention post-final order as prolonged and unconstitutional. *Zadvydas* held that post-order detention may only continue for a period "reasonably necessary" to effectuate removal.[18] The Third Circuit distinguished the holding stating that "*Zadvydas* had no occasion to address the due process concerns posed by prolonged detention of someone in Guerrero-Sanchez's situation who is still seeking withholding-only relief."[19] "This distinction is material because detaining Guerrero-Sanchez without a bond hearing while he pursues his bona fide withholding-only claim 'would effectively punish [him] for pursuing applicable legal remedies.'"[20]

The precedential Third Circuit case bearing Guerrero's name requires a bond hearing after six months of detention.[21] Presently, the Government asserts that

---

[16]    *Id.*

[17]    533 U.S. 678 (2001).

[18]    *Id.*

[19]    *Guerrero-Sanchez* 905 F.3d at 220.

[20]    *Id. citing Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 271 (3d Cir.2012).

[21]    *Guerrero-Sanchez*, *supra* at 271.

Guerrero was taken back into custody[22] because he was arrested[23] in Texas, had

changed his residence to Texas, and failed to obtain permission from ICE to travel

between Nevada and Texas.[24]  Specifically, the Government provided an email from

an ICE employee that asserted that Mr. Guerrero was taken back into custody for the

following reasons:

> Mr. Guerrero-Sanchez was released on an order of supervision from
> immigration custody. His last report date to immigration officials was on
> 03/07/2018 and was given the permission to travel to Texas, but was to
> return 03/11/2018. He did report back to ERO Las, Vegas on 03/14/2019.
> After that date, he was not given the permission to return to Texas. On
> 08/24/2018 he was found by ERO Houston at the Harris County Sheriff's
> Office in Houston, Tx for the offense that was later dismissed. At the time,
> the legal dept for ICE in Houston was consulted as whether to drop a
> detainer on him or not. OCC advised that he was a danger to the
> community stemming from the details of the case, and the conditions of
> release were violated because he was found in Houston without
> permission. He also gave an address of residence in Houston, Tx which is
> also a violation of the conditions of release.

*****

---

[22] Part of the fallout from Guerrero's having been taken back into custody is that the immigration judge in Las Vegas transferred venue from Las Vegas to Houston.  This caused a cascade of problems for Guerrero, who was already back to square one with his withholding-only proceedings based on the Third Circuit's remand of the original immigration judge's decision. First, the reasonable fear hearing that was originally scheduled for September 5, 2019 in Las Vegas was rescheduled for May 21, 2019 in Houston.  Guerrero's retained counsel for the Las Vegas hearing withdrew his representation of Guerrero because the hearing had been moved. While Guerrero would have been counseled for his September 5, 2019 reasonable fear hearing before the immigration court, he now has to proceed pro se for the May 21, 2019 hearing in Houston.  Additionally, the retained expert for the reasonable fear hearing has withdrawn from his agreement to testify, as he will not testify in uncounseled hearings.

[23] The details of Guerrero's arrest are confusing, at best.  According to Guerrero, he was one of three partners who owned a construction company.  One of the partners was writing checks to herself from the company account, and another partner withdrew a large sum of money from the account for no logical reason."  Pet. Br. ECF No. 63 at 8.  Guerrero filed a police report against his partner, who in turn, falsely told the police that he had threatened her life. *Id.* at 9.

[24] Govt. Br. ECF No. 65 at 6.

[S]orry, I erroneously put a last report date of 03/14/2019. Per ICE database, his last report date was 03/14/2018. He was arrested by the Harris County Sherriff's Office on 08/23/2018 and was transferred to ERO Houston custody on 11/29/2018. He has been in immigration custody since that date. My apologies again.[25]

Guerrero filed the Motion to Enforce Judge Caldwell's February 13, 2017 order *pro se*, although counsel has since entered an appearance on his behalf. Guerrero argued that the custody determination was improperly decided because he did not violate Judge Caldwell's Order as the charges against him in Texas were ultimately dismissed. He further argued that his ICE officer knew of and had granted permission for his travel to Texas. Guerrero stated in his reply brief,

> On March 7, 2018 Guerrero asked for permission to travel to Texas for a possibility to create a construction company, Mr. Guerrero was meeting with an investors group from Las Vegas to rehab houses in Houston that were damaged after hurricane Harvey. Mr. Gurrero was directed to report back regarding the outcome of his meeting on 3/14/18…
>
> On 3/14/18, Guerrero reported back where he explained to a different Immigration Officer that he [Guerrero] needed to be traveling back and forth Las Vegas/Houston. This officer told Guerrero that he didn't see any problems with that since Guerrrro has been complying with his supervise[] release[] for more than a year and a half, this officer directed Guerrero to report back on 9/10/2019. Mr. Guerrero went back to ICE-Las Vegas to confirm his ability to travel, the same officer was not available and Guerrero was directed to come back in two days. Guerrero went back and the previous Immigration Officer confirmed to Guerrero it was okay to travel, he wrote in Guerrero's report and directed Guerrero to report back on the same date of 9/10/2019…[26]

---

[25] Govt. Br. Ex. 1. ECF No. 65-1.

[26] Pet. Reply Br. ECF No. 70 at 5-6.

ICE redetained Guerrero pursuant to its authority under Section 236 of the INA, codified at 8 U.S.C. 1226, the "pre-removal statute":[27]

Alien's Name: GUERRERO SANCHEZ, RAFAEL IGNACIO     A-File Number: 076 736 498

Date: 11/29/2018

Event ID: MTG1911000789     Subject ID: 363171084

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

[X] Detained by the Department of Homeland Security.

[ ] Released (check all that apply):

    [ ] Under bond in the amount of $ _____

    [ ] On your own recognizance.

    [ ] Under other conditions. [Additional document(s) will be provided.]

LENOIR, L. 1651
Name and Signature of Authorized Officer

11/29/2018 12:18 AM
Date and Time of Custody Determination

SDDO
Title

U.S. IMMIGRATION & CUSTOMS ENFORCEMENT DRO - Montgomery County, TX Sub Office  MONTGOMERY COUNTY, TX US
Office Location/Address

[28]

Be that as it may, the Third Circuit has already held that this Petitioner's detention is in the "the post-removal phase"[29] governed by INA 241and codified at 8 U.S.C. § 1231.  "To summarize, Guerrero-Sanchez's detention is governed by § 1231(a)."  This holding is significant to the current procedural posture, because when detention falls under Section 1226(a), as is the approach used by the United States Court of Appeals for the Second Circuit,[30] bond hearings are held at the detainee's request at the outset of the proceedings.  Because Section 1231(a) authorizes

---

[27]  *Guerrero-Sanchez*, at 215.

[28]  See Pet. Br. ECF No. 63-1 at 2.

[29]  *Guerrero-Sanchez*, at 215.

[30]  *See Guerra v. Shanahan,* 831 F.3d 59 (2d Cir.2016).

detention, as held by our Court of Appeals, following a decision of the United States

Court of Appeals for the Ninth Circuit,[31] then withholding-only detention is subject to

the same substantive and procedural limits that apply to post-order detention more

generally.

Moreover, the Texas charges against Guerrero were quickly dismissed on

November 27, 2018 at the "request of complaining witness" and because "probable

cause exists, but case cannot be proven beyond a reasonable doubt at this time:"[32]

Furthermore, ICE took custody of Guerrero on November 29, 2018, two days after the

charges against him were dismissed by the Harris County, Texas District Attorney's

Office. Had the charges not been dismissed, this would have been a clear violation of

Judge Caldwell's order.[33] I note that ICE took custody of the Petitioner only after the

local Texas authorities dismissed the charges and relinquished custody of him.

Because it appeared from the record that Guerrero was being improperly held

in ICE custody, the Court contacted counsel to represent Guerrero and scheduled a

---

[31]   *Padilla-Ramirez*, 882 F.3d 826, 832 (9th Cir. 2017).

[32]   See Pet. Br. ECF No. 63-1 at 5.

[33]   *See, e.g.*, Transcript of Judge Kane's December 10, 2017 Hearing on a Motion to Enforce in the matter of *Madrane v. Hogan*, No. CIV.A.3:05-02228, ECF No. 63 (M.D. Pa. December 10, 2007) (Kane, J.). THE COURT: Then shouldn't ICE apply to the court for a modification of the orders in the case of changed circumstances and come back before the court?... The court clearly made a determination at that time that continued detention of Mr. Madrane was unconstitutional and then proceeded to determine under what conditions Mr. Madrane might be released… I appreciate the fact that if Mr. Madrane had committed a new crime, this would be a harder case. If he were observed robbing a bank, I don't think ICE would have to hesitate long to think, hmm, should we call the judge and ask if it's okay to arrest him first? No, if he commits a new crime and it's clear that he could otherwise be lawfully detained, it would make sense to me.

hearing on the motion to enforce. Upon closer review, the Government has concluded that continued detention of Guerrero is inappropriate. It filed a notice with the Court on May 1, 2019 disclosing that ICE released Guerrero on his own recognizance.[34] Because Guerrero has been released, the motion to enforce Judge Caldwell's release Order is now moot and the scheduled hearing on the motion is unnecessary.

Finally, Daniel Conklin, Esquire, entered his appearance for Guerrero after being contacted by prior counsel, who was unable to continue to represent this litigant. Mr. Conklin did so *pro bono publico* and I commend him for his prompt and careful attention to this matter and its importance to the Petitioner.

## III.   CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Petitioner's Motion to Enforce, January 22, 2019, ECF No. 63 is **DISMISSED as MOOT**. Consequently, the hearing scheduled for May 6, 2019 is **CANCELLED**.

2. Petitioner's Motion to Withdraw Petitioner's Counsel of Record, April 8, 2019, ECF No. 69, is GRANTED. The Clerk of Court is directed to terminate Ryan D. Brunsink, Esquire on the docket.

3. Daniel Conklin, Esquire is formally commended for both his willingness to represent Petitioner *pro bono publico* and his preparedness for the now cancelled May 6, 2019 hearing.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[34]   ECF No. 75.